UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPP
NORTHERN DIVISION

SCOTT M. CRAWFORD, ET. AL                                      PLAINTIFFS

VS.                                  CIVIL ACTION NO. 3:08-CV-586-TSL-FKB

THE CITY OF JACKSON                                             DEFENDANT

MEMORANDUM OPINION AND ORDER

Before the court is the motion of plaintiffs Scott M. Crawford, Dewone Banks, Jason Bunche, Gwendolyn Byrd, Lee Cole, Jan Hawthorne, Irene Myers, Bonnie Thompson, Melvina Tobias, Eddie Turner, Jerri Walton, Mississippi Coalition For Citizens With Disabilities and Mississippi Council For The Blind, Jackson Chapter to extend until June 30, 2024 the consent decree originally entered in March 2010.  Defendant City of Jackson, Mississippi has responded in opposition to the motion.  The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

In September 2008, plaintiffs, Jackson residents with mobility or visual disabilities or organizations advocating for such residents, filed suit seeking declaratory and injunctive relief to remedy the City's alleged violations of plaintiffs' rights to essential transportation services under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act of 1973, 29

1

U.S.C. 794, et seq., and regulations promulgated under these statutes. Plaintiffs alleged that the City failed to provide fixed route buses with operative lifts, failed to adequately train staff, failed to operate buses with air conditioning, denied eligible paratransit trips, provided late and extended paratransit trips, failed to dispatch paratransit operators to correct addresses and failed to provide accessible sidewalks and bus stops. In July 2009, the United States intervened as a plaintiff.

On March 30, 2010, the court entered the consent decree, which purported to resolve all issues raised by plaintiffs, except those relating to sidewalks and bus stops. In addition to generally requiring the City to comply with the ADA and Rehabilitation Act and their attendant regulations, the consent decree detailed the City's obligations to maintain accessibility features in operative condition, perform preventive maintenance, provide alternative transportation, employ and train bus drivers, provide handlift paratransit services, provide complementary paratransit service, hire an ADA coordinator, establish and implement a complaint procedure, commence public outreach, and provide for data for evaluation of the City's compliance with the decree. Regarding each of these obligations, the consent decree provided timelines, benchmarks

and reporting requirements. Under "Implementation and Enforcement," the consent decree provided as follows:

> Plaintiffs may review compliance with this Decree at any time and may enforce this Decree if either believes that it or any of its provisions have been violated. If any party believes that this Decree or any portion of it has been violated, it will raise any concern(s) with the City and the parties will attempt to resolve the concern(s) in good faith. The City will have twenty-one (21) days from the date it is notified of any breach of this Decree to cure that breach, before a party can institute any action with the Court.

By its terms, the consent decree was to remain in effect for five years; the court retained jurisdiction to enforce the decree.

In March 2015, the court granted a joint motion by the parties to revise and extend the decree to allow the City additional time to comply with six identified obligations. Under the terms of the court's March 2015 order, the decree was to expire on "September 30, 2016, unless the interests of justice require further extension." Since that time, on either the parties' joint motions or, ultimately, by agreement, the court has extended the consent decree four more times. Under an order entered in June 2022, the decree was set to expire June 30, 2023, "unless the interests of justice require further extension." Plaintiffs filed the present motion on June 8, 2023, asking the court to extend the decree to June 30, 2024.

3

The court stayed expiration of the consent decree pending resolution of plaintiffs' motion.

Plaintiffs agree "that there has been much improvement in the paratransit system." However, in their motion, they point out that in April 2023, as reflected in the City's then-most recent report on compliance, the City fell short of three benchmarks for paratransit services: There were 66 missed trips instead of the 20 allowed by the consent decree, and on-time drop-offs and pickups were at 75% and 84%, respectively, which was below the 95% required by the decree. They further note that the City has yet to fully implement the numerous recommendations for improvement in paratransit services set out in a report prepared by Transdev, a contractor hired by the Department of Justice to assist with monitoring JTRAN.

Plaintiffs initially asserted in their motion that since the City "has not reached full compliance with the Consent Decree, … an additional one-year extension is warranted to address the continued service deficiencies and meet all the terms of the Decree" and "to monitor the [City's] progress" in implementing the recommendation in the Transdev report. In its response in opposition, the City submits that plaintiffs' reliance on the April 2023 data is misplaced, as the more recent June 2023 data (which was not available when plaintiffs filed

4

their motion) provides a more accurate representation of the state of public transportation and the strides made by the City. In June, there were 60 missed trips out of 4,019 trips; 90% were within the pickup window and 97% were within the on-time pickup window or up to fifteen minutes after. The City asserts that while the on-time drop-off rate was still only 85%, this is largely due to reasons beyond the City's control, such as streets that are sometimes impassable due to roadwork, potholes or watermain breaks.

    The City argues that over the last thirteen years, it has diligently made strides to come into compliance with all provisions of the consent decree. It notes that there is nothing in the consent decree mandating sustained compliance for a certain length of time, or requiring the City to comply with recommendations of a third-party technical expert, or otherwise complying with any demands outside the terms of the consent decree itself. And it insists that it has acted in good faith at all times. For example, it has already implemented some, and is working to implement all of the third-party technical expert's recommendations, even though not required by the consent decree, thus demonstrating its intention to maintain continued forward progress. Further, over the years, it has consistently agreed to plaintiffs' repeated requests for extensions of the decree's expiration, such that what was to be

5

a five-year decree has now been in place for over thirteen years. And while it acknowledges that it is not now and has never been in full compliance with the consent decree, the City maintains that it has substantially complied with all the requirements of the consent decree -- and certainly has gone "above and beyond what the Federal regulations require" -- such that the time has come for the consent decree to dissolve.

In reply, plaintiffs agree that the June 2023 numbers are better, but they contend that one month of good numbers is not sufficient to allow the consent decree to expire. Rather, they argue, the City should be required to show sustained improvement. Ultimately, plaintiffs state that they are not at this time demanding that the City meet all the consent decree's performance standards and are instead "demanding that [the City] demonstrate sustained improvement, not just a last-minute spike." Plaintiffs declare, "If the City can maintain its current on-time pickup performance, and improve its on-time drop-off performance, the Plaintiffs will be satisfied. However, an extension of the Consent Decree is warranted to see if the City can sustain these numbers."

"Consent decrees have elements of both contracts and judicial decrees. A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and

a five-year decree has now been in place for over thirteen years. And while it acknowledges that it is not now and has never been in full compliance with the consent decree, the City maintains that it has substantially complied with all the requirements of the consent decree -- and certainly has gone "above and beyond what the Federal regulations require" -- such that the time has come for the consent decree to dissolve.

In reply, plaintiffs agree that the June 2023 numbers are better, but they contend that one month of good numbers is not sufficient to allow the consent decree to expire. Rather, they argue, the City should be required to show sustained improvement. Ultimately, plaintiffs state that they are not at this time demanding that the City meet all the consent decree's performance standards and are instead "demanding that [the City] demonstrate sustained improvement, not just a last-minute spike." Plaintiffs declare, "If the City can maintain its current on-time pickup performance, and improve its on-time drop-off performance, the Plaintiffs will be satisfied. However, an extension of the Consent Decree is warranted to see if the City can sustain these numbers."

"Consent decrees have elements of both contracts and judicial decrees. A consent decree embodies an agreement of the parties and is also an agreement that the parties desire and

expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." United States v. Alcoa, Inc., 533 F.3d 278, 288 (5th Cir. 2008).  In exercising its enforcement power, the court construes the consent decree under general principles of contract interpretation.  United States v. Chromalloy Am. Corp., 158 F.3d 345, 350 (5th Cir. 1998).  Thus, like a contract, consent decrees are to be construed only by reference to the "four corners" of the order itself.  Id.  The terms of a consent decree are to be construed according to their ordinary meaning and the court is not free to impose additional obligations beyond those memorialized in the parties' agreement. Alcoa, 533 F.3d at 286.  Nonetheless, because consent decrees are also judicial orders, the court is afforded wide discretion to enforce the decree's terms.  Id.  While the remedy fashioned by the court need not match those requested by a party or originally provided by the court's earlier judgment, any relief ordered pursuant to the court's enforcement powers may not exceed the scope of the consent decree.  See Smith v. Sch. Bd. of Concordia Par., 906 F.3d 327, 336 (5th Cir. 2018).

   The consent decree herein states that plaintiffs "may enforce this Decree if [they] believe[] that it or any of its provisions have been violated."  As a basis for their request that the term of the decree be extended, plaintiffs charge that

7

provisions of the decree have been violated.[1]  The City does not deny this.  The decree clearly mandates that the City "meet [prescribed] performance standards," and the City has admittedly failed to meet these performance standards.  It is true that the decree does not purport to require "sustained" compliance with any performance standard.  Regardless of whether it has done so on a sustained basis, however, the City does not dispute that it has never meet all of the performance standards required by the decree.[2]  The Fifth Circuit has held that extension of a consent

---

[1]   The court rejects plaintiff's further argument that the expiration date should be extended so that plaintiffs can monitor the City's implementation of the third-party technical expert's recommendations.  While the City acknowledges that the technical expert's assistance has proven helpful and states that it is working toward compliance with the recommendations, this is strictly voluntary, as there is nothing in the consent decree that requires compliance with these recommendations.

[2]   The City contends that it may never be able to meet certain of the decree's performance standards, which it claims have become "unrealistic," e.g., the requirement of no more than 20 missed trips.  It also argues that the performance requirements exceed what the law requires.  However, irrespective of what the law requires, the City agreed to these standards when the decree was first entered, and it has never sought modification of any of the decree's requirements.
    The City also specifically argues that there are circumstances beyond its control that have negatively impacted its ability to comply the on-time drop-off standard, such as roadwork, watermain breaks and potholes on city streets.  It is curious that the City does not claim that these same conditions have not also adversely affected its ability to meet, or at least come closer to meeting the on-time pickup standard.  In any event, the City has offered no evidence to establish its inability to meet the drop-off standard due to these alleged circumstances.

decree can be an appropriate exercise of a court's enforcement power.  See Alcoa, Inc., 533 F.3d at 286 (affirming district court's extension of consent decree as exercise of its enforcement power).  Given  the City's admitted violation of the express terms of the decree, the court will grant plaintiffs' request for an extension of the expiration of the consent decree to June 30, 2024.

Accordingly, it is ordered that the motion to extend is granted.

SO ORDERED this 4th day of December, 2023.

/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE